**LAW OFFICE OF ROGER W. FRAZIER**
2525 E. Broadway Blvd., Suite 200
Tucson, Arizona 85716
Tel:  (520) 882-4294
Fax:  (520) 882-2853
Roger W. Frazier, Arizona Bar No. 012146
roger@frazierlawaz.com

**Attorney for Plaintiff**

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Jan True, an individual,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>The U.S. Roche Long-Term Disability Plan; The U.S. Roche Health and Welfare Benefits VEBA Plan; Lincoln Life Assurance Company of Boston fka Liberty Life Assurance Company of Boston; Genentech, Inc., a Delaware corporation,<br><br>　　　　　　Defendants. | No.<br><br>**COMPLAINT** |

　　　　For her Complaint, Plaintiff Jan True, alleges as follows:

**<u>THE PARTIES, JURISDICTION AND VENUE</u>**

1. Plaintiff Jan True ("Plaintiff" or "Ms. True") is currently a resident of Lyon County, Nevada, and was a resident of Pima County, Arizona when the denial of benefits as alleged in this Complaint occurred, and Pima County, Arizona is where she was employed by Ventana Medical systems, Inc. ("Ventana") and while participating in the plans at issue as set forth in this Complaint, and at the time her claims for benefits under the plans were denied.

2. Defendant The U.S. Roche Long-Term Disability Plan ("LTD Plan") is a long-term disability plan that provided long-term disability benefits to eligible

participants of the LTD Plan, and caused events to occur in Pima County, Arizona out of which this claim arises.

3. The U.S. Roche Health and Welfare Benefits VEBA Plan ("VEBA Plan") provided various component health and welfare benefit plans to employees of Ventana, including the LTD Plan identified in the foregoing paragraph, and caused events to occur in Pima County out of which this case arises. When referring to the LTD Plan and VEBA Plan together, they shall be referred to hereinafter as "The Plan").

4. Defendant Lincoln Life Assurance Company of Boston was formerly known as Liberty Life Assurance Company of Boston (hereinafter referred to as "Liberty") and was at all times relevant to this Complaint the claims administrator for the LTD Plan, and after granting long-term benefits for three and a half months, denied further long-term disability benefits to Plaintiff under the LTD Plan, and caused events to occur in Pima County, Arizona out of which this case arises.

5. Defendant Genentech, Inc. ("Genentech"), is a Delaware corporation and is the plan sponsor and plan administrator of the VEBA Plan and on information and belief, of its component plans including the LTD Plan at issue in this case, at all times material to the matters alleged in this Complaint. Genentech caused events to occur in Pima County, Arizona out of which this Complaint arises.

6. This case arises out of the Employment Retirement Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., and particularly 29 U.S.C. § 1132(a)(1)(B), to recover benefits due Plaintiff under the terms of The Plan set forth in this Complaint, to enforce her rights under the terms of The Plan, and to clarify her rights to future benefits under the terms of The Plan.

7. The United States District Court, District of Arizona in Tucson, Arizona is a proper venue for this case pursuant to 29 U.S.C. § 1132(e)(2).

8. The claims in this case arise under federal law, specifically ERISA and 29 U.S.C. § 1132(e)(1) and (f), and therefore this is a federal question and jurisdiction in this Court is permitted under 28 U.S.C. §1331.

## GENERAL ALLEGATIONS

9. Plaintiff incorporates the allegations in Paragraphs 1-8 above as though fully restated here.
10. Plaintiff was employed by Ventana from in or about August, 2008 until Ventana terminated her on or about February, 2018, when she did not return to the position she held prior to going on disability leave.
11. While she was employed by Ventana, and at the material times to this complaint, Plaintiff was a participant in The Plan, including the LTD Plan.
12. Plaintiff's regular job at Ventana for all times material to the matters alleged in this Complaint was design quality engineer, whose duty it was to ensure product quality and patient safety for new health care products, with the essential functions of the position including responsibility for taking charge of quality control of product designs and creations, and to assure that information is noted, discussed and shared over a number of interfacing audiences.
13. In or about the summer of 2016, while working on the development of a new health care product for which Plaintiff was the design quality engineer, the project lead instructed the team to ignore newly obtained data indicating false positives for budgetary reasons.
14. Without regard to whether her conclusions were justified, Plaintiff believed this was going to lead to people getting false positive cancer diagnosis that she was responsible for preventing.

15. When Plaintiff raised her concerns with superiors, they issued a warning letter to her for alleged performance issues.

16. Decades prior to this incident, Plaintiff had suffered PTSD that originated with a childhood trauma.

17. Plaintiff's concerns that others would be harmed, whether accurate or not, aroused PTSD relapses.

18. Beginning on or about February 21, 2017, Plaintiff was provided with short-term disability benefits on diagnoses from several providers of depression, anxiety, PTSD and insomnia.  In June Liberty denied further short-term benefits, but following an appeal by Plaintiff, on October 11, 2017 Liberty reversed its denial and allowed short-term disability benefits for the entire time which the short term disability plan allowed such benefits, which was for six months. During this entire time, Plaintiff was on leave from her position at Ventana.

19. Plaintiff also applied for long-term disability benefits under the LTD Plan which on October 12, 2017, was approved effective from August 22, 2017, which was immediately after her short-term benefits ended.  Plaintiff continued to be on leave from her position at Ventana during this time.

20. Plaintiff provided Liberty with records from a psychiatrist, Aliya Kahn, M.D., who evaluated Plaintiff in July, 2017, who indicated she had significant depression, crying spells, significant anxiety, disassociation, sleep/appetite problems, focus/concentration issues, and safety issues.

21. Plaintiff provided Liberty with records from her then-psychiatrist Stephen Streitfeld, M.D., from September and October, 2017 in which Dr. Streitfeld stated that Plaintiff has severe anxiety and depression, and "severe concentration problems that would interfere with her returning to work."  He noted that she was originally diagnosed with PTSD several decades before, and said that the events

of the workplace had significantly aggravated pre-existing conditions that had caused her to be unable to function in her previous workplace since February, 2017. He stated that when Plaintiff is on the job as a design quality engineer, and is caught up in and instructed to ignore pertinent information, that those events significantly aggravated her pre-existing conditions of PTSD and measured depression, which in turn prevent her from doing this job.

22. The records submitted show that Plaintiff declined psychotropic remedies or sleep medications with both Dr. Kahn and Dr. Streitfeld because she had tried them before and felt they failed and had unacceptable side effects, but that she was amenable to other treatments for depression such as transcranial magnetic stimulation (TMS) or electroconvulsive therapy (ECT).

23. The notes from Dr. Streitfeld included a recommendation in October, 2017 that Plaintiff be continued off work for the next six months while pursuing psychotherapy and considering trying other treatments for her depression and anxiety.  He referred to PTSD and Major Depression as documented pre-existing conditions that were significantly aggravated by events that occurred in the workplace, and that those diagnoses were attached to that encounter.

24. On December 5, 2017, Liberty notified Plaintiff of Liberty's denial of benefits effective November 30, 2017 on grounds that Plaintiff was no longer disabled as defined by the LTD Plan. Liberty held that based on the findings of its independent medical examination, Plaintiff was not totally disabled from performing her own occupation.

25. In its denial letter of December 5, 2017, Liberty relied on the findings of its independent medical examiner, Dr. John Zincone, a psychiatrist.

26. Dr. Zincone opined that certain clinical notes do not provide descriptions of a mental status exam, no cognitive testing, no clinical information to support

reported impairments, and that Dr. Streitfeld did not describe signs of severe and persistent mental illness.  But Dr. Streitfeld had noted in several of his own mental status exams that Plaintiff's mood was anxious and depressed, which was in addition to her self-reporting of these symptoms to other providers and therapists (and which had been accepted for short-term disability).

27. Dr. Zincone also said there was no neurological testing to support claims of cognitive impairment that would inhibit the ability to carry on job functions, but Liberty's letter of December 5, 2017 was the first time the lack of neurological testing was a perceived weakness in the claim.  There is nothing in the LTD Plan definition of disability that requires that there be a cognitive impairment.

28. Dr. Zincone also claimed that after several months of symptoms, a psychiatric evaluation would be indicated.  But there is no requirement in the LTD Plan definition of disability requiring in-patient hospitalization.

29. The question of *disability* under the LTD Plan is whether Plaintiff was able to perform the *material and substantial duties* of her *regular job* due to her *sickness*.  All of the italicized terms in the foregoing sentence are defined in the LTD Plan, as is the term *mental illness*, which Plaintiff had under the LTD Plan definitions.  All of Plaintiff's own providers opined conditions that fit the foregoing definitions.

30. Dr. Zincone, who did only a paper review and not a personal examination of Ms. True, states there was no evidence of the childhood events that Plaintiff claims as the source of her original PTSD, but there were no records of it at the time of the underlying event, and records for the provider who originally diagnosed her when she was 24 years old no longer exists, because that provider had a retention policy of seven years, which had long ago passed when the issue arose in 2017.  Her providers who examined her in person did not doubt the existence of the

childhood trauma.

31. Dr. Zincone opined that the events at Ventana were not a Criterion A stressor for PTSD because they were not life or death situations or where her physical safety would be in jeopardy, in the authority on which he relied (DSM-5) is it stated that "the traumatic event can be reexperienced in various ways."

32. Dr. Zincone also raised, for the first time, the use of marijuana as severe cannabis abuse. However, Plaintiff had long previously been prescribed medical marijuana and had a marijuana card though the State of Arizona for that use, and preexisting the subject events at Ventana.

33. From findings by Dr. Zincone, Liberty reported in its denial letter of December 5, 2017 that Plaintiff was "able to engage in activities that require intact cognitive thinking that include driving, taking online courses, volunteering your time to do work related activities, and that you are able to travel, manage your schedule and finances."  These are not the definition of disability in the LTD Plan, and overlook the fact that Ms. True's providers show that anxiety, depression and fear of and avoidance of PTSD symptoms resurfacing are preventing her from doing the material and substantial duties of her regular job.

34. Plaintiff timely filed a pro per first level appeal on or about January 31, 2018, and included a note from Dr. Streitfeld dated December 12, 2017, that she could return to work in a position where the primary focus of the position makes her not primarily not [sic] responsible for overseeing all aspects of product quality."

35. Liberty denied the first level appeal on February 20, 2018, basically on the same grounds as in Dr. Zincone's letter, and that the medical evidence was that she had job dissatisfaction with the company she worked for, this was not related to functional impairment from a psychiatric condition.

36. Plaintiff timely appealed the denial of her first level appeal determination, this time with the assistance of counsel, on July 25, 2018.

37. The second level appeal was denied by Liberty on September 19, 2018.

38. Defendant Liberty misapplied the definition of regular job in finding that she could do her regular job under the definitions of disability and regular job and other definitions under the LTD Plan. As claims administrator, Liberty's construction of the LTD Plan's terms was unreasonable.

39. Plaintiff could not do her regular job under the definition of the LTD Plan at the time that benefits ceased on November 30, 2017. Defendant Liberty wrongfully denied benefits to Plaintiff as claims administrator.

40. Following Liberty's denial on September 19, 2018 of Plaintiff's second level appeal, Plaintiff had exhausted her administrative remedies and was entitled to file a lawsuit. However, Plaintiff was also given the option to file a voluntary appeal to the US Roche Benefits Appeals Committee c/o Genentech. Plaintiff filed her voluntary appeal on November 15, 2018.

41. In processing Plaintiff's voluntary appeal, Genentech stated that it determined that performing an independent psychological evaluation would have enabled Lincoln Financial Group (FLG) to better assess disability status and determine if continuation of long-term disability benefits was warranted, and that LFG would reopen the claim for purposes of facilitating this evaluation. Ms. True underwent the evaluation with Dr. Linda Miller on February 22, 2019.

42. Dr. Miller opined that the record reasonably supports DSM V diagnoses dating back to November 30, 2017: PTSD, major depressive disorder, recurrent, remission, unspecified insomnia disorder, and certain drug abuses, but no evidence of impairment from mental illness from November 30, 2017, and that although her symptoms were moderate to severe in 2017, they were improving

with other treatments Plaintiff had received, that cannabis Plaintiff had used since 2015 for sleep could cause problems with concentration, attention and memory, and that Plaintiff was ready to work again. Dr. Miller opined that Plaintiff had been reactive to stressful life events rather than symptoms of mental diseases.

43. Dr. Miller indicated that her findings that "there is no evidence of impairment attributable to mental illness from November 30, 2017 and beyond" and that Plaintiff would be able to sustain full-time work at her regular job.

44. The U.S. Roche Benefits Appeals Committee through Genentech denied the voluntary appeal by way of letter dated July 30, 2019. The Committee stated it reached its decision because the records indicated Plaintiff could not return to her regular job at Roche (Ventana) because of the specific work environment there, but that the test under the definition of regular job does not cover whether Plaintiff could perform that job in the specific work environment at Roche.

45. The Plan agreed that any statute of limitations applicable to pursuing Plaintiff's claim in court is suspended during the period of the voluntary appeal process. This case is filed within the statute of limitations as tolled following the voluntary appeal.

46. Plaintiff has exhausted her administrative remedies and all conditions precedent to bringing this lawsuit have been met.

47. Liberty was not given discretion to interpret the terms of the Plan, and therefore the standard of review in this case is de novo. The right to final determination of the terms of The Plan remained with the Plan Administrator, Genentech.

48. If the voluntary appeal affects the standard of review, it remains de novo with Liberty, but to the extent the standard is deemed to be abuse of discretion, the construction of the terms and definitions within The Plan were unreasonable and

were therefore arbitrary and capricious.

49. Even if Liberty had discretion to construe the terms of the LTD Plan, its determination of Plaintiff's claim was the result of factors which demonstrate an abuse of discretion, including but not limited to, failure to analyze and consider Plaintiff's actual job requirements in view of her impairments, and in the selection and dependence on reviews of medical consultants who did not personally examine Plaintiff without adequate explanation, and such actions were arbitrary and capricious.

50. Plaintiff continues to this day to be unable to work at a job similar to the position she held at Ventana, even though she can perform other functions.

51. Liberty, and if applicable, Genentech, misclassified Plaintiff's ability to do her regular job under the Plan, and accordingly, decided incorrectly according to the Plan that she was not disabled for purposes of long-term benefits under the LTD Plan.

## FIRST CAUSE OF ACTION – CLAIM FOR BENEFITS

52. Plaintiff incorporates paragraphs 1 through 51 as though fully set forth herein.

53. 29 U.S.C. § 1132(a)(1)(B) permits a Plan participant to bring a civil action to recover benefits due under the terms of the Plan and to enforce Plaintiff's rights under the terms of the Plan.

54. At all relevant times to this Complaint, Plaintiff was disabled under the LTD Plan's definition of disabled, and all other definitions from the LTD Plan incorporated into the definition of disabled.

55. As a proximate cause of Defendants' actions and based on the evidence submitted in her claims, the denial of benefits to Plaintiff was wrongful under the terms of the Plan, and Plaintiff is entitled to her benefits from the time they were stopped on November 30, 2017, until such time as it may be determined that she

may have recovered from her disability under the definition of disability in the LTD Policy.

56. By denying Plaintiff's claim for long-term disability benefits, Defendants have violated and continue to violate the terms of the LTD Plan and The Plan, the terms of ERISA, and Plaintiff's rights thereunder.

57. Although Liberty had three separate independent psychiatrists review Plaintiff's records, none of them performed an independent psychological evaluation based on personal examination of Plaintiff.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests that the Court grant the following relief against the Defendants and each of them:

A. Declare that the Defendants, and/or each of them, violated the terms of the Plan by declining to provide Plaintiff with long-term disability benefits due under the LTD Plan and to enforce Plaintiff's rights under the terms of The Plan.

B. Award Plaintiff her benefits that should have been paid to her under the LTD Plan but were not paid.

C. For an award of prejudgment interest on benefits awarded, all of which would have accrued by the time of the filing of this Complaint.

D. Award Plaintiff's reasonable attorney's fees and costs of this lawsuit pursuant to 29 U.S.C. § 1132(g); and

E. Provide such other relief as the Court deems equitable and just.

DATED this 21st day of May, 2020.

LAW OFFICE OF ROGER W. FRAZIER

 /s/ Roger W. Frazier
Roger W. Frazier
Attorney for Plaintiff